GEORGE RUSSELL *vs.* NATHANIEL S. HOWE

The *St.* of 1858, c. 93, abolishing the offices of judge of probate and judge of insolvency in the several counties and providing for the appointment of a judge of probate and insolvency in each county, is constitutional, and transfers to the judge of probate and insolvency all the jurisdiction of the judge of probate.

PETITION for a mandamus to compel the judge of probate for this county to take jurisdiction of a petition presented to him on the 6th of July 1858, for a grant of letters of adminis-

tration on the estate of an inhabitant of this county; and upon which he had refused to take any action, because by the provisions of *St.* 1858, *c.* 93, his office had been declared to be abolished and all his jurisdiction and authority as such to be transferred to the judge of probate and insolvency appointed and commissioned under that statute.

*B. R. Curtis & J. W. Perry,* ( *O. P. Lord* with them,) for the petitioner. If the *St.* of 1858, *c.* 93, attempts to abolish the probate court as it was recognized by the Constitution to exist, and as it has existed since, it is unconstitutional and void. The Constitution of Massachusetts, in the " frame of government," and under the head of "judiciary power," ordains that " the judges of probate of wills and for granting letters of administration shall hold their courts at such place or places, on fixed days, as the convenience of the people shall require; and the legislature shall from time to time hereafter appoint such times and places; until which appointments the said courts shall be holden at the times and places which the respective judges shall direct; " and that " all appeals from the judges of probate shall be heard and determined by the governor and council until the legislature shall by law make other provision." *C.* 3, §§ 4, 5. The people have thus commanded that courts for the probate of wills and for granting letters of administration shall be brought into and continued in existence; that at all times there shall be laws or regulations fixing the times and places for holding such courts; regulations by the respective judges until laws should be enacted; regulations by laws forever afterwards. Nothing could be more positive than " the judges of probate of wills shall hold their courts," and " the legislature shall from time to time appoint " the times and places at which the judges shall hold their courts.

The Constitution provides that each of these courts shall be held by a particular judicial officer, designated and described as " judge of probate of wills and for granting letters of administration." This office and the courts held by these officers had been legally constituted and established as early as 1692, the year after the granting of the province charter, and had existed

nearly a hundred years when the Constitution was adopted. The judges of probate were appointed, like other judicial officers, by the governor and council; the fact that they were surrogates or deputies to the governor concerned only their relations to other courts. White on Probate Courts, 16. *Wales* v. *Willard*, 2 Mass. 124. *Peters* v. *Peters*, 8 Cush. 541. Governor Pownall's Message to his Council in 1760 [Quincy, 573–579]. Their power and duties were fixed, not by the charter, but by legislation. Prov. Sts. 4 W. & M. (1692); 5 W. & M. (1693); 8 W. 3 (1696); 12 W. 3 (1700); 2 Anne (1703); 6 G. 1 (1719); 26 G. 2 (1752); 33 G. 2 (1760); 16 G. 3 (1776); Anc. Chart. 230, 253, 291, 352, 377, 425, 592, 628, 695.

These judges were judicial officers, and to be appointed as such under the Constitution of the Commonwealth, *c.* 2, § 1, art. 9. But by *c.* 6, art. 6, all previous laws not repugnant to the Constitution were to continue in force until altered or repealed, and by art. 9 all officers and courts were to hold until others should be appointed. On the 2d of November 1780, Governor Hancock issued a proclamation by which the then judges of probate were continued in office, and he soon afterwards appointed and commissioned judges of probate under the Constitution. And such judges of probate continued to transact business and were recognized by statute, although no act formally establishing courts of probate was passed until March 12th 1784. *Sts.* 1782, *c.* 25; 1783, *c.* 24, §§ 4, 16, 17, 19; *c.* 46. This *St.* of 1783, *c.* 46, provided for the holding of such courts by some judge "appointed or to be appointed," and provided that appeals should be taken to this court as the supreme court of probate. The Constitution had expressly given power to change the appellate court, but not the original courts of probate.

The probate court and judges of probate are recognized in the Constitution with more certainty than the supreme judicial court and the judges of that court, because at that time there were probate courts and judges of that name, while there was no "supreme judicial court" or judges thereof; and the contemporaneous legislation shows that more formal acts were

deemed necessary to establish the supreme court than to estab-lish probate courts. *Sts.* 1780, *cc.* 9, 17 ; 1782, *c.* 9.

The Constitution, by ordaining that " the judges of probate of wills and for granting letters of administration shall hold their courts " at fixed times and places, has created an office, without limit as to time, and which must therefore continue until the Constitution is changed. No known rule of constitu-tional construction will warrant the insertion in this article of such words as " so long as it shall be the pleasure of the legisla-ture that there shall be such courts."

The power given by the Constitution, *c.* 1, § 1, art. 3, to the general court to erect and constitute judicatories and courts of record, and other courts, was also given by the province charter, which expressly reserved to the governor and council the juris-diction of the probate of wills and granting administration. Legislation was indeed required to erect a probate court under the Constitution ; but, once erected, it could not be abolished. So the Constitution of the United States provides for a supreme court, but legislative action was required to establish it as to incidental powers, manner of keeping records and compensation of the judges.

The *St.* of 1858, *c.* 93, does not in terms or effect abolish the court of probate or court of insolvency ; but undertakes to abolish the judges of probate and judges of insolvency, which are different things. Co. Lit. 58. 3 Bl. Com. 36. 3 Kent Com. (6th ed.) 454. The statute does not change these courts, nor reorganize them, nor unite them, nor provide for a transfer of their business to a new court, but simply provides that a new officer shall come in and exercise the duties of the judges of both these courts. It is a transfer of the functions of judges not a creation of a new court. This is unprecedented and unconstitutional. If the legislature can provide that while a particular judicial court of the Commonwealth stands, a new judge shall come in and take the place of the previous one, of what weight is the clause in the Constitution securing the tenure of the judicial office?

*S. H. Phillips & W. G. Choate,* for the respondent. By the

Constitution, " the general court shall forever have full power and authority to erect and constitute judicatories and courts of record or other courts ; " " to make, ordain and establish all manner of wholesome and reasonable orders, laws, statutes and ordinances, as they shall judge to be for the good and welfare of this commonwealth, and for the government and ordering thereof, and of the subjects of the same ; " and " to set forth the several duties, powers and limits of the several civil and military officers of this commonwealth." *C.* 1, § 1, arts. 3, 4. Under these powers the general court may enlarge or abridge, in part or in whole, the jurisdiction of all courts except the supreme judicial court, and the power of all civil officers, whether existing at the time of the adoption of the Constitution, or since established, even if recognized by the Constitution as then existing and exercising certain powers and jurisdiction ; and this authority extends to the abolition of such courts and officers, and has been repeatedly exercised to this extent. *Wales* v. *Belcher*, 3 Pick. 508. *Brien* v. *Commonwealth*, 5 Met. 508. *Dearborn* v. *Ames*, 8 Gray, 1. 21 Law Reporter, 75, 76. 1 Kent Com. (6th ed.) 303.

The provision in the Constitution that the judges of probate " shall hold their courts at such place or places, on fixed days, as the convenience of the people shall require," cannot be construed to perpetuate either the power or the existence of that office as then established. Its avowed purpose is to secure to the people certain and easy access to courts having jurisdiction in matters of probate, to which all the people sometimes have occasion to resort ; and the clause is copied substantially from the Prov. St. of 6 G. 1, (1719), in which this was certainly its only purpose. Anc. Chart. 427. 21 Law Reporter, 79, 80. This clause may indeed require that there shall be always some officer having probate jurisdiction in each county, and might therefore be violated by a law abolishing the office of judge of probate and providing no court or officer in his stead. The power expressly given to the general court by the Constitution, *c.* 3, art. 5, to transfer at its will the jurisdiction of the existing supreme court of probate to any other tribunal, seems wholly in

consistent with a perpetual establishment of the power or office of the existing inferior judges of probate.

The Constitution expressly provides that the justices of the supreme judicial court, (meaning thereby the highest judicial court, by whatever name it might be called, for then no court of that name existed; 21 Law Reporter, 66–71,) shall hold their offices so long as they shall behave themselves well; and the omission to make any such provision for the judges of probate must be deemed intentional. *Expressio unius exclusio alterius.*

If the courts of probate and courts of insolvency yet exist, the *St.* of 1858, *c.* 93, is still constitutional, and abolishes the defendant's office as judge of the court of probate, or takes from him the power or incident of membership of that court without abolishing his judicial office. The office of a judge is not inseparable from being a member of a particular court. Two persons holding distinct offices may even be members of the same court; as in the case of the circuit court of the United States, the members of which are two persons holding distinct offices, one a justice of the supreme court, and the other a judge of the district court of the district in which the circuit court is held. Or the same person by virtue of one office may be a member or judge of two courts; like the justices of the supreme court of the United States. And if two persons may be judges of the same court at the same time, and yet hold different offices, it would seem that two persons may be judges in the same court successively and yet not hold the same office. The legislature may either abolish the court, or transfer and change the powers of the officer. *Sts.* 1782, *c.* 14; 1803, *c.* 154, § 3; 1807, *c.* 11; 1821, *c.* 109, §§ 2, 5, 6, 11; 1843, *c.* 7. *Brien* v. *Commonwealth,* 5 Met. 508. *St.* 1855, *c.* 449. N. H. St. of 1855, *c.* 1659. U. S. St. of 1802, sess. 1, *c.* 31. *Stuart* v. *Laird,* 1 Cranch, 299.

But if the *St.* of 1858, *c.* 93, would be unconstitutional if it continued in existence the probate court and the court of insolvency, it must be construed to abolish those courts. The general purpose of the statute is manifest, to transfer the power and jurisdiction of the two officers whose offices are abolished; and

no construction should be adopted which will defeat this purpose, if it can be avoided. A statute will not be pronounced void, to the disturbance of existing institutions and the prejudice of public and private rights, unless the legislature have clearly exceeded their powers. *Opinion of Justices,* 8 Gray, 21.

SHAW, C. J.* The specific object of the petition is for a *mandamus* to the judge of probate, requiring him to take jurisdiction. We then find the act transferring the jurisdiction to the judge of probate and insolvency. *St.* 1858, *c.* 93. Is it valid in this respect?

It is almost unnecessary to state that a law cannot be declared void, or beyond the power of the legislature, unless in a clear case; that it may be void in part, and valid in another part; and further, that in deciding whether a specific legislative provision is constitutional, the court will look mainly at the thing done, rather than the mode of doing it; and therefore, although an act may be clumsily drawn, and in a manner not satisfactory, still, if we can see what the legislature actually intended to accomplish, and in looking at the terms of the act, the legal effect is to accomplish such purpose and no more, and if it is within the constitutional power of the legislature to effect such change of the law, the judicial conclusion will be, that it is not unconstitutional.

The effect of this act was to transfer the jurisdiction of a probate court and an insolvent court to a new court thereby constituted. The probate court was a judiciary under the Constitution, and its jurisdiction might be modified, enlarged, diminished or transferred, in the same manner as the jurisdiction of all other courts subordinate to the supreme judicial court.

*Petition dismissed.*

---

* This is printed from the memorandum of the decision in the handwriting of the chief justice. His death prevented the writing out of a full opinion.